UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  02/13/2026
```

--------------------------------------------------------------- X
               :

MAO-SHENG LIN,              :
               :

               Petitioner,  :        1:25-cv-9039-GHW
               :

       -v-            :    MEMORANDUM OPINION &
               :         ORDER

WARDEN, ORANGE COUNTY JAIL, *et al.*  :
               :

          Respondents.  :
               :

--------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

On October 30, 2025, petitioner Mao-Sheng Lin filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his continued detention by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") violates 8 U.S.C. § 1231(a)(6); principles of fairness and due process; and the Due Process Clause of the Constitution.

The Court assumes the parties' familiarity with the factual background of this case as articulated in Mr. Lin's petition, Dkt. No. 1 ("Pet."); the Government's return, Dkt. No. 7 ("Answer"); the declaration of ICE Deportation Officer Imani Montgomery, Dkt. No. 8 ("Montgomery Decl."); the Government's brief in opposition to the petition, Dkt. No. 9; and Mr. Lin's reply in further support of his petition, Dkt. No. 13.

Though Mr. Lin has met his initial burden to show that there is good reason to believe that he will not be removed in the reasonably foreseeable future, because the Government has rebutted Mr. Lin's showing, his petition is denied.

## I.    LEGAL STANDARD

### A.    Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241

Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"

*Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### B.    Detention of Noncitizen Subject to Final Order of Removal

The detention of a noncitizen subject to a final order of removal is governed by 8 U.S.C. § 1231. That provision directs the Attorney General to "remove the alien from the United States within a period of 90 days," known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Detention is mandatory for the 90–day removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). Thereafter, section 1231(a)(6) authorizes the Attorney General to detain three classes of persons "beyond the removal period"—including those who, like Mr. Lin, have been found "inadmissible" under section 212 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1182. The noncitizen's custody is subject to periodic reviews conducted by ICE. *See* 8 C.F.R. § 241.4. The regulations governing the custody reviews provide that if it is established, "at any stage" of the review, that "travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest." *Id.* § 241.4(g)(3). The regulations also provide that "there is no appeal from" an ICE custody review. *Id.* § 241.4(d).

In *Zadvydas v. Davis*, the Supreme Court avoided the "serious constitutional threat" presented by a "literal" interpretation of section 1231(a)(6), which could authorize "indefinite, perhaps

permanent, detention" in some circumstances.  533 U.S. 678, 689, 699 (2001).  The Court held that section 1231(a)(6) "authorizes the Attorney General to detain a removable alien . . . only for a period reasonably necessary to secure the alien's removal."  *Id.* at 682.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  The Court recognized a six-month "presumptively reasonable period of detention."  *Id.* at 701.  "[A]fter that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (quoting *Zadvydas*, 533 U.S. at 701).

The "6–month presumption, of course, does not mean that every alien not removed must be released after six months."  *Zadvydas*, 533 U.S. at 701.  "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  Thus, *Zadvydas* "places an initial burden on the detainee" to establish that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  533 U.S. at 701.

"Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that."  *Rual v. Barr*, No. 6:20-CV-06215 EAW, 2020 WL 3972319, at *3 (W.D.N.Y. July 14, 2020) (quoting *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (citations, quotations, and alterations omitted), *appeal withdrawn*, No. 19-3333, 2020 WL 1862195 (2d Cir. Feb. 6, 2020)).  "In particular, 'the passage of time combined with' the 'government [being] no closer to . . . repatriating [a detainee] than they were once they first took him into custody' is sufficient to satisfy Petitioner's initial burden."  *Id.* (quoting *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 102–03 (W.D.N.Y. 2019)).  However, "the petitioner must present more than 'mere assertions that removal is unforeseeable.'"  *Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting

*Juma v. Mukasey*, No. 09 CIV 3122 PAC AJP, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)).

"Unsupported allegations that the relevant embassy or consulate 'will not issue a travel document in

the foreseeable future' are insufficient." *Id.* (quoting *Juma*, 2009 WL 2191247, at *3). "Nor is it

sufficient for the petitioner to show that the Government has been unable to obtain a travel

document to date." *Id.* at 434–35.

Only once the petitioner "makes this initial showing does the burden shift back to the

government, which 'must respond with evidence sufficient to rebut that showing.'" *Beckford v. Lynch*,

168 F. Supp. 3d 533, 539 (W.D.N.Y. 2016) (quoting *Zadvydas*, 533 U.S. at 701). "In analyzing the

likelihood of removal, courts consider a variety of factors, including the existence of a repatriation

agreement with the target country, the target country's prior record of accepting removed aliens, and

specific assurances from the target country regarding its willingness to accept an alien." *Hassoun v.

Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (citing *Callender*, 281 F.

Supp. 3d at 436–37; *Nma v. Ridge*, 286 F. Supp. 2d 469, 475 (E.D. Pa. 2003)).

"Due deference is owed to the government's views on these matters as well as its estimation

of the likelihood of removal." *Hassoun*, 2019 WL 78984, at *4; *see Zadvydas*, 533 U.S. at 700 (stating

that review "must take appropriate account of the greater immigration-related expertise of the

Executive Branch, of the serious administrative needs and concerns inherent in the necessarily

extensive . . . efforts to enforce this complex statute, and the Nation's need to 'speak with one voice'

in immigration matters").

However, "as the period of prior postremoval confinement grows, what counts as the

'reasonably foreseeable future' conversely [ ] shrink[s]." *Zadvydas*, 533 U.S. at 701. "In effect, the

parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at

*4. "[A]s time passes, the mere existence of possible avenues for removal becomes insufficient to

justify further detention; some evidence of progress is required." *Id.* (collecting cases)

II.    **DISCUSSION**

Mr. Lin has met his initial burden to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Mr. Lin "is a native and citizen of the People's Republic of China." Montgomery Decl. ¶ 3. Mr. Lin has been detained since his order of supervision was revoked in June 2025. Pet. at 3. As of the date of this order, Mr. Lin has been detained for over six months. Mr. Lin asserts that "[r]emoval to [his] country is impossible due to non-removability, as [his] home country refuses to accept [his] return." *Id.* He adds that his "[c]ountry of removal has consistently refused to issue travel documentation." *Id* at 7. Mr. Lin supports his assertions by referencing his own experience. Mr. Lin avers—and the Government does not dispute—that he was "[d]etained by ICE Dec. 2018–March 2019, then released under supervision because deportation was impossible." *Id.*; *see also* Montgomery Decl. ¶ 14. Accordingly, Mr. Lin has met his initial burden to demonstrate that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Though Mr. Lin has met his initial burden, the Government has proffered evidence sufficient to rebut his showing. Once a petitioner meets his initial burden, "the burden shift[s] back to the Government, which 'must respond with evidence sufficient to rebut that showing.'" *Beckford*, 168 F. Supp. 3d at 539 (quoting *Zadvydas*, 533 U.S. at 701). The Government has met that burden. Addressing Mr. Lin's contention that China refuses to issue travel documentation, the Government proffers evidence demonstrating "the target country's prior record of accepting removed aliens." *Hassoun*, 2019 WL 78984, at *4. Ms. Montgomery affirms that "[s]ince January 2025, China has accepted citizens who were removed from the United States and has issued travel documents." Montgomery Decl. ¶ 23. She further affirms that "[i]n the Fiscal Year 2025, ICE has removed 411 individuals to China." *Id.*

The Government also proffers evidence to rebut Mr. Lin's assertion that China will refuse to accept his return in particular. Ms. Montgomery affirms that "China issues travel documents upon an individual's nationality being verified by the China National Immigration Administration." *Id.* The turnaround time for this process, "in more recent experience, can generally range from 30 days to several months." *Id.* ICE sent a request for a travel document for Mr. Lin to the Chinese Embassy on July 2, 2025—soon after Mr. Lin was detained on June 18, 2025. *Id.* ¶ 18. The Chinese Embassy replied, "request[ing] additional information." *Id.* On October 6, 2025, "an additional travel document request was sent to ICE headquarters in Washington D.C., for submission to the Chinese Embassy, containing additional information [ ], including passport quality pictures." *Id.* ¶ 20. As of November 10, 2025, ICE headquarters represented that "the travel document request was still pending with the Chinese Embassy and still going through identity verification." *Id.* ¶ 21. Ms. Montgomery affirms that once the document is obtained, Mr. Lin will be booked "on the earliest practicable commercial flight to China." Montgomery Decl. ¶ 24.

Mindful of the deference due to the "government's views on these matters as well as its estimation of the likelihood of removal," *Hassoun*, 2019 WL 78984, at *4, the Court finds that the Government's evidence sufficiently rebuts Mr. Lin's showing. Accordingly, Mr. Lin's continued detention pending his removal is currently lawful under 8 U.S.C. § 1231(a)(6).[1]

None of Mr. Lin's remaining challenges justify granting his petition. Mr. Lin alleges violations of his constitutional due process rights premised on the length of his detention, the burden the detention imposes on his family, the conditions of his confinement, and the lack of notice he received when his order of supervision was revoked. *See* Pet. at 7–8. "[F]or an applicant for admission like [Petitioner], '[w]hatever the procedure authorized by Congress is, it is due process

---

[1] The Court notes that this conclusion may change if, in a future petition by Mr. Lin, the Government is no closer to securing the required documentation to remove Mr. Lin. *See Zadvydas*, 533 at 701.

as far as an alien denied entry is concerned.'" *Arana v. Arteta*, No. 1:26-CV-240-GHW, 2026 WL 279786, at *5 (S.D.N.Y. Feb. 3, 2026) (quoting *Zadvydas*, 533 U.S. at 693). Therefore, because Mr. Lin's detention comports with the INA, it does not violate his constitutional rights. *Id.*; *see also Wang*, 320 F.3d at 146. The Government has also proffered evidence that it provided Mr. Lin notice of the revocation of his order of supervision in compliance with regulations promulgated under the INA. *See* Answer, Exs. H, I, J; *see also* Montgomery Decl. ¶ 16.

Accordingly, Mr. Lin's petition must be denied.

## III.    CONCLUSION

For the foregoing reasons, Mr. Lin's petition for a writ of habeas corpus is DENIED without prejudice. The Clerk of Court is directed to enter judgment for Respondents and to close this case.

SO ORDERED.

Dated:  February 13, 2026
        New York, New York

_____
GREGORY H. WOODS
United States District Judge